of America, Mr. Wilkinson for the appellant, Ms. Stratton for the appellee. Good morning. Good morning. This is an APA case where one part of the agency, that's the NDRB, found in favor of the plaintiff and they followed the law. Another agency authority, that's the SRA, overturned the NDRB and he did not follow the law. That's why we're here. When he saw he was going to be challenged, the SRA tried to justify his decision with a post hoc memo, which of course is a big part of the challenge and leads to the issues that are in front of you. Namely, that the second memo was post hoc, that the SRA didn't properly articulate or support his decision in either of his two memos. How is it post hoc if you're basically maybe better explaining your reasons as opposed to adding additional reasons? Because in this case, the reasons were not in the original decision at all. The original decision just had some boilerplate and also a misrepresentation of what the NDRB had said. It based its decision on a claim that the NDRB had made. If that is not in the original decision, you can't do an amplified articulation. What would you consider were separate and independent reasons when you say that they were not in the original decision? What are you specifically referring to? I'm referring to all his discussions of the specific evidence. For example, he says, I find this piece of testimony to be persuasive. I find this piece of testimony to be persuasive. And he doesn't mention various contrary pieces of testimony, but none of that testimony did he even talk about in his actual decision. But in the January memorandum, the SRA stated that after reviewing the BOI transcript, their associated records, just basically alluding to that they had looked at everything and then came out with their rationale. Right. And that's exactly the problem because any agency, whether or not he is looking at the evidence, can put in some boilerplate to say, I have now read everything. And if you say that it can be an amplified articulation, in fact, I think I gave an example in my original brief, he could say, I hereby declare that I have read everything in the record, and you lose. And from then on, anything post hoc is okay, as long as he remembers to list out the record. And that's especially a problem in this case, because in this case, you do have an adversarial proceeding in the record, which is the BOI. When you have an adversarial proceeding. I don't even understand really quite why this is like a amplification situation. So there was a short decision, and then, you know, the appellant sought reconsideration, and then there were further reasons given. So we have before us the decision that was made with both, you know, both the January and the April explanations for what happened. I mean, that's very typical, you know, in other agencies where, you know, petitioner seeks reconsideration, we consider both the original decision and the decision on reconsideration. So that all of that is just before us. Except for the fact, second memo refused to reconsider. And the SRA said, you know, you want reconsideration. I am not giving you reconsideration. Very typical, though, right? To say, you know, to say, like, we're not granting reconsideration, but we're further explaining. And that's just it. If he's not reconsidering, then the stuff in that second memo is invalid, unless it is simply amplifying what was in the actual decision, which is the January memo. And the January memo doesn't talk about that stuff. Granting reconsideration, I mean, another way to say that is the decision was to deny reconsideration. And the explanation for denying reconsideration is what's given in the April memo. I don't think the language really supports that. It's one thing to say, I am reconsidering, and you still lose. That happens all the time. You know, okay, I didn't look at it carefully enough. Now I will look at it more so, and you lose when I do. Reversing things very finely for what is an informal adjudication process. Well, you are supposed to do that. You're supposed to read it critically. And that's under the Supreme Court DHS versus Regents case. When you're dealing with a possible post hoc situation, it says you are supposed to read it critically, which is what the trial court didn't do. Post hoc circumstances are, you know, where it's post hoc and litigation or post hoc in some other context. But here we have, you know, we have an agency action, we have the reconsideration decision, and all of that is here. But that also is something else the Supreme Court discussed in the Regents case. They're saying it isn't just for litigation. And it's, now I forget the term. I think the language you're talking about in Regents, because I was thinking about the same point that Judge Rao was making last night, is that Regents, the opinion says that if there's a reconsideration, then that reconsideration should be the final agency order. But if it's not, then we look at the original order and the reasons given in it, and you can amplify those. And I think the Supreme Court even cites one of our cases in support of that you can amplify, but you can't go beyond it if the original order is the final agency action. And I believe that the parties scrapped over which order was the final agency order, and the district court held that the first SRA decision was the final agency action. And I'm not sure whether your friends on the other side, it seems to me that that's your strongest point, unless you're convinced that that's not really the final agency action. That is correct, sir. Although the language I was actually thinking of from Regents was where they said that while it is true, the court has often rejected justifications belatedly advanced by advocates. We refer to it as a prohibition on post hoc rationalizations, not advocate rationalizations, which is emphasizing that it wasn't something that just applied to something a lawyer comes up with in litigation, but rather it was something that was done at any level at any point. How do we deal with the credibility findings? Because there was one side credited over the Well, in this case, the DOD instruction says that if either the NDRB or the SRA is denying relief, which the SRA did in this case, he has to say why he preferred one piece of evidence over the other. But instead, for the most part, he never even admitted that there was evidence on Mr. McGough's side. The one exception is he did say there were five witnesses who spoke well of his military performance. And he said, but I prefer this one witness, Commander Gates, over those five, and he doesn't say why. So that doesn't meet the DOD instruction, though, at least unlike the other cases he mentioned that it existed. And then just for final agency action, just to reconnect that the parties don't dispute that the January memo was the final agency action, correct? I don't. I leave it to the government to say what they think. I think I'm right out of time. All right. We'll hear you on rebuttal. Yes, sir. Good morning, Ms. Stratton. Good morning. May it please the Court. I'm Assistant United States Attorney Kim Stratton. I represent the federal government, the appellee in this case. The appellant was involuntarily removed from the Navy after the Board of Inquiry conducted a adversarial proceeding. During that proceeding, witnesses, victims, and the appellant testified under oath. At the end of that proceeding, the Board of Inquiry determined that by lying during an investigation, stalking and harassing a shipmate, and sexually assaulting a different shipmate, the appellant should be discharged under other than honorable conditions. The appellant has tried to change that decision multiple times. The first petition to the Navy Discharge Review Board was denied. On the second petition to the Navy Discharge Review Board, after a two-hour conversation, that Navy Discharge Review Board decided to upgrade his discharge to honorable. And in doing so, that board downgraded the finding of sexual assault to merely creating uncomfortable feelings in a relationship, and stalking and harassing to only violating the intent of a military protective order. The Secretary of Review Authority was reasonable when he decided to review the entire record and reject the second Navy Discharge Review Board's decision. Does the government, do we have to adopt a heightened deference standard for the government to prevail here? We believe that the unusual deference standard is called for here any time that the court is assessing the military's own assessment of in-performance conduct. I'm sorry, in-service performance and conduct. But I think the question was whether it's necessary. Could we just stop at arbitrary and capricious review? So it's not necessary to use the unusual deference to decide whether the Secretary of Review Authority reasonably explained himself. But that's not what the appellant is asking for here. He wants the second Navy Discharge Review decision to stand. He wants the honorable discharge. And he wants this court to tell the Secretary of Review Authority that he cannot review this case again. So for that reason, we believe that unusual deference does apply in this case. Because of the, I'm sorry, because of the remedy that's being sought? And the analysis that the court would have to do to get to that remedy? Does the government lose if we don't adopt unusual deference standard? Can the government prevail under the ordinary APA arbitrary and capricious standard? Yes, we believe that the first memo and the second memo combined will prevail under the APA. Let me ask you about this final agency action issue. I don't read your brief as contesting the district court's ruling that the January 17, 2023 memo order was final agency action. I don't see you contesting that. Did I miss something in your brief? We certainly didn't concede that that was the final agency action. Our view is that the two memos combined complete the agency's decision in this application. I mean, I'm looking at your brief on page 37 and you describe the January 17, 2023 action as the final agency action and as what came after an amplified articulation of that action. That's correct. So I want to just ask you a question then about Department of Homeland Security v. Regents, University of California, where the Supreme Court says that we have to focus on the agency's reasoning at the time of the agency action and then the amplification has to be of reasons that were given at the time of the action. So here that would be the January 17 action. So if that's the case, then isn't the government precluded from adding new reasons? I mean, the Supreme Court says the agency may elaborate later on that reason or reasons given at the time of the action, but may not provide new ones. That's the way that the court put it. Correct. And the second memo did not provide new reasons for the government's actions. The second memo explained the reasons, the reason why it decided against upgrading the discharge in its first memorandum. So what about description of evidence and credibility and those sorts of things? So the connection to the first memorandum, the Navy Discharge Review Board decided that he did not run afoul of the military protective order, and that board also decided that there was no specific evidence of misconduct. In his first memorandum, the Secretary said that he reviewed the whole record and decided otherwise, that there was evidence to support the other than honorable discharge claim, and that there was violation of the military protective order. The second memorandum went through the record and cited the evidence that he relied on, what he determined to be more credible, and what he found to be uncredible. And there's a secondary argument that the SRA's decision is contrary to law because it conflicts with the DOD instruction 1332, which requires the SRA to set forth conflicting evidence and explain why evidence relied on was more persuasive than evidence that was rejected. I didn't see much of a response in the briefing to that argument substantively. We rely on the memo, and the memo, the Secretary did respond. He pointed out the evidence that he found more credible and the evidence that he did not. So, we believe that the memo, the second memo, complies with the DOD regulations. Do you think that just saying in an original, in the final agency action, I reviewed all the evidence, and I find for, you know, I find X accordingly, that that is sufficient enough explanation so that any discussion of the evidence afterwards doesn't run afoul of the rule articulated in Department of Homeland Security v. Regents? I do. I believe that the initial memorandum, while brief, it did list the evidence that the Secretary reviewed, and the second memorandum went into detail of that evidence. There wasn't anything new in the second memorandum, so the case doesn't run afoul of Homeland Security versus Regents of California. Is that generally, as your friend on the other side would say, boilerplate language? Is that generally something that's in every memorandum, that you just kind of put that in there, I've reviewed everything, and then you just have a few words about what has occurred in the case? No, and the language that's being cited in the memorandum is a topic sentence, and there is meat underneath it that explains further the reason for that determination. All right. Any further questions? All right. If you want to make some concluding remarks, or if there's something you haven't covered yet, then please feel free. If there are no further questions, the government respectfully requests that the District Court opinion be affirmed. Thank you. Thank you. Mr. Wilkinson, I think you had two minutes. Yes, sir. My colleague was talking as if this case was a challenge to the decision of the BOI. That really isn't true. In fact, the NDRB didn't really, although I said this by mistake in a brief, even overturn the BOI. The BOI made a decision as to whether Ensign McGough, the Navy officer, would be discharged, and they found he would be with OTH. That happened, and that's unchanged. The NDRB was making a decision as to whether Citizen McGough, the civilian, would carry this continued stigma of other than honorable discharge, and sexual perversion listed on his discharge paperwork, and they decided that he would not. In addition to the language that we've been talking about from the Regent's case, I should be especially critical in a case when there is an adversarial proceeding down below, because an adversarial proceeding is a perfect opportunity for anyone who wants to make a post hoc decision. You just do what this SRA did. Look at the evidence from one side, ignore the evidence from the other, and say, that's what I was thinking all along. So I will ask that you be particularly critical in a case like this. And when it comes to the relief we're asking, I will say that the SRA had two bites of the apple. The first time, he didn't even read the NDRB decision he was overturning, because he misrepresented it, and he misrepresented the basis for its decision. The second time, he said a lot more. He at least talked about the evidence, but he still didn't do what the regulation said. That suggests we are dealing both with, you know, that we are dealing with a very biased tribunal. And if it ends up back with him, then all the courts have done is to give him an instruction manual. These are the magic words you have to say to do what you wanted all along, but you don't have that conjunction of deliberative process with the proper standards and the actual articulated decision. That's my time. But what, if anything, is really contrary to DOD instruction 1332 about the decision? Well, the language that I heard you quoting a minute ago, he's supposed to set forth, one of you, he was supposed to set forth the conflicting evidence and say why it is he preferred this side over that side. On most issues, he didn't even admit the existence of the conflicting evidence. In the case of the officers who spoke about Mr. McGaugh's performance, he did admit there were five on his side and one against. He said, I prefer the one to the five, and he didn't say why. And in fact, there were things in the record suggesting that it should have been the other way, because, for example, Commander Gates had not worked with Mr. McGaugh for a year before the board met, whereas the officers who testified for him had the more information. That doesn't mean that the SRA had to prefer the five to the one, but it does mean he had to say something about why, and he simply did not. He just declared, I prefer this one. Why isn't it not enough that the SRA identified the conflict and then made statements about why they believe one side versus the other? But that's just it. He didn't make statements about why. He only declared that he preferred one to the other. There is no why. But you win, you lose is not why. You don't take that to be implicit in the decision when you credit one side? No, sir. Sorry. No, ma'am. To the contrary, you know, saying why means saying why, whereas declaring it is just declaring it. And if the regulation says you have to say why, then I think that's a requirement that he completely failed to didn't even really try. All right. Thank you. Your matter, case is submitted.
judges: Wilkins; Rao; Childs